**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

PAULA KRENSAVAGE,                    )
                                     )
               Plaintiff,            )
                                     )
        v.                           )          02: 04cv1476
                                     )
BAYER CORPORATION and                )
BAYER CORPORATION WELFARE            )
BENEFITS PLAN,                       )
                                     )
               Defendants.           )

**MEMORANDUM OPINION AND ORDER**

September 27, 2006

        Presently pending before the Court for disposition are the MOTION FOR PARTIAL

SUMMARY JUDGMENT, with brief in support, filed by Plaintiff, Paula Krensavage,

(*Document Nos. 15 and 16*) and the MOTION FOR SUMMARY JUDGMENT, with brief in

support, filed by Defendants Bayer Corporation and Bayer Corporation Welfare Benefits Plan

(*Document Nos. 18 and 19*).

        After careful consideration of the parties' cross motions for summary judgment, the

filings in support and opposition thereto, the memoranda of the parties, the relevant case law,

and the record as a whole, the Court finds that there is not sufficient record evidence upon

which a reasonable factfinder could return a verdict for Plaintiff, Paula Krensavage, on her

claim under the  Employment Retirement Income Security Act of 1974 ("ERISA") that her

request for LTD benefits was improperly denied by the Bayer Corporation Welfare Benefits

Plan; and (ii) on her claim under the Americans with Disability Act ("ADA") that her

employment was unlawfully terminated and/or that Bayer did not properly accommodate her

disability.  There is, however, sufficient record evidence to support Defendants' Motion for

Summary Judgment.  Therefore, the Court will deny Plaintiff's Motion for Partial Summary

Judgment and grant in its entirety the Motion for Summary Judgment filed by Bayer

Corporation and Bayer Corporation Welfare Benefits Plan.


## Summary Judgment Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as

follows:

> [Summary Judgment] shall be rendered forthwith if the pleadings, depositions,
> answers to interrogatories and admissions on file, together with the affidavits, if any,
> show that there is no genuine issue as to any material fact and that the moving party
> is entitled to judgment as a matter of law.

In interpreting Rule 56(c), the United States Supreme Court has stated:

> The plain language . . . mandates entry of summary judgment, after adequate time for
> discovery and upon motion, against a party who fails to make a showing sufficient to
> establish the existence of an element essential to that party's case, and on which that
> party will bear the burden of proof at trial.  In such a situation, there can be no
> genuine issue as to material fact, since a complete failure of proof concerning an
> essential element of the non-moving party's case necessarily renders all other facts
> immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury

could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).  The Court must view the facts in a light most favorable to the non-moving party

and the burden of establishing that no genuine issue of material fact exists rests with the

movant.  *Id.* at 242.  The "existence of disputed issues of material fact should be ascertained by

resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870. 874 (3d Cir. 1972)).  Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by `showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325.  If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230.  When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-50.

### BACKGROUND

As the law requires, all disputed facts and inferences are resolved most favorable to the Plaintiff, Paula Krensavage ("Plaintiff").  Plaintiff was employed by Bayer Corporation ("Bayer") from July 1993 until November 2003 as an Administrative Assistant in the Polyurethane Division Customer Service Department.

3

*The Bayer Corporation Disability Long Term Disability Plan*

As an employee of Bayer, Plaintiff was a participant in the Bayer Corporation Disability Long Term Plan (the "Plan"), an ERISA-covered employee welfare benefit plan.

The Plan provides income and other benefits to employees who are disabled for more than 26 weeks. For the first six months of long term disability, a participant is considered totally disabled if he or she is "unable to perform the essential duties of [the participant's] regular occupation." After six months, the Plan defines "total disability" as when a participant is "unable to work at any job for which you are or could become qualified by education, training, or experience." *(Summary Plan Description at 27-28).*

According to the Plan, Bayer Corporation is the Plan Sponsor and Plan Administrator, which is the designated fiduciary of the Plan.[1] The Plan vests the Plan Administrator with discretion to make final determinations as to any facts necessary or appropriate for any claims under the Plan, to interpret the terms and provisions of the Plan and to determine any and all questions arising under the Plan. Kemper Services ("Kemper") is the Claims Administrator and "provides administrative and claims processing services to the Plan."

Disability benefits are paid from a Trust funded by periodic contributions from Bayer. Benefits are also funded, in part, by participant salary reduction contributions.

---

[1]   Due to a corporate reorganization, Bayer Corporate and Business Services, LLC succeeded Bayer Corporation as the Plan Administrator in 2004, and is the entity which denied the Plaintiff's claim on appeal. However, for convenience, throughout this Memorandum Opinion, the Plan Administrator will be referred to simply as Bayer Corporation or "Bayer."

*Factual Background*

In February 2002, Plaintiff underwent multi-level lumbar surgery which required her to be off work on Bayer's short term disability ("STD") program through June 2002.  In May 2002, at Plaintiff's request, Bayer performed an "ergonomic evaluation" of Plaintiff.  As a result of that evaluation, Bayer arranged for a "moveable desk" device for Plaintiff's use so that she could sit or stand, as needed to do her job. No other accommodations were requested or made by Plaintiff in 2002.

On April 9, 2003, Plaintiff again went on STD because of an operation necessitated by an automobile accident. Plaintiff was on STD for twenty-six weeks, until October 2003, and did not return to work at the end of that period.  In August 2003, Plaintiff applied for long-term disability benefits ("LTD"), which would, if she qualified, commence upon expiration of the short-term disability period.

On August 26, 2003, Plaintiff applied for Social Security Disability benefits because she believed then, as she continues to believe, that she is incapable of any kind of work on a regular basis.

On October 1, 2003, Plaintiff's treating physician, James Kang, M.D., completed an Evaluation of Physical Abilities form in which he opined that Plaintiff was not released back to her own occupation, that she was continuing to have neck spasms that would restrict her ability to work, but that she was capable of performing sedentary work for an 8-hour day.[2] *(Administrative File, at 29. )*

---

[2]    In a November 19, 2003, letter, Dr. Kang revised his opinion and stated that Plaintiff was not able to engage in any work activities due to her pain and neck spasms.

At Kemper's request, a General Peer Review of Plaintiff's medical records was conducted by an independent orthopedic surgeon, James Wallquist, M.D., who issued a report on October 6, 2003.  Dr. Wallquist concluded that "based upon a review of the medical documentation provided, there are insufficient updated quantitative objective physical findings and diagnostics to correlate with the claimant's subjective complaints of pain and spasm in the neck to support a functional impairment that would preclude this claimant from performing the core elements of her own occupation in a sedentary work category." *(Administrative File, at 30-32.)*

Plaintiff's STD benefits expired in early October 2003.  By letter dated October 10, 2003, Plaintiff was informed by the LTD Plan's third-party claims administrator, Kemper, that her application for LTD benefits had been denied.  Kemper explained that "there are insufficient updated quantitative physical findings and diagnostics to correlate with your subjective complaints of pain and spasm in the neck to support a functional impairment that would preclude you from performing the core elements of your own occupation in a sedentary work category." *(Administrative File, at 27.)*   Kemper further explained that it had determined that Plaintiff did not qualify as disabled under the LTD Plan on the basis of Plaintiff's own treating physician's statement, as well as the independent opinion of Dr. James Wallquist.

Thereafter, Bayer granted Plaintiff a thirty-day "personal leave"beginning October 10, 2003, the date on which her LTD benefits were denied, through November 7, 2003, while she appealed the denial of LTD benefits.

By letter dated November 3, 2003, Plaintiff notified her supervisor, the human resources director, and the medical department at Bayer as follows:

Inasmuch as Bayer, through Kemper, has found me not to be qualified for Long Term Disability, I have no choice but to return to work on Weds. Nov. 5 even though my treating orthopaedic surgeon, Dr. James D. Kang, has not released me.

On Weds. morning at 8:30 am, I will report to the Medical Dept. for further instructions.

*(Pl's Appx., Exh. 15.)*

It is undisputed that it is the policy of Bayer to not permit an employee to return to work without first obtaining a medical clearance.

Also on November 3, 2003, Plaintiff visited a chiropractor, Thad C. Schrickel, D.C., who completed an "Off Work Slip" in which he stated that "Patient is unable to return to work for an indefinite period of time." *(Pl's Depo., Exh. 16.)*

On November 5, 2003, Plaintiff reported to the Bayer Medical Department and stated that she did not feel that she was physically able to return to work.  Plaintiff informed the medical department that she was having neck spasms, requested an ice pack, and eventually was sent home.  The only accommodation which Plaintiff requested was to be given an indefinite leave of absence. *(Pl's Depo. at 42.)*

On November 6, 2003, Plaintiff obtained a letter from Dr. Schrickel, which she submitted in pursuit of her LTD claim. The letter concluded that "It is my opinion that she is totally and permanently disabled from any and all work as a result of her injuries and surgeries." *(Administrative File, at 3.)*

The next day, November 7, 2003, Plaintiff submitted her appeal of the decision to deny her application for LTD benefits to the Bayer's "ERISA Review Committee" ("Review Committee").  In support of her appeal, Plaintiff submitted the November 6, 2003 letter and

report from Dr. Schrickel, and a Family & Medical Leave Act Certification form, which was dated October 20, 2003.  Several weeks later, on November 25, 2003, Plaintiff submitted additional information to the Review Committee which consisted of a November 19, 2003 letter from James D. Kang, M.D., post-operative reports from April 2003, and a letter from Joseph P. Endrich, M.D., her primary care doctor.   The correspondence submitted by Plaintiff from Drs. Schrickel, Kang, and Endrich each  expressed the opinion that Plaintiff was unable to engage in any work activities due to her chronic pain and neck spasms.

On November 10, 2003, Plaintiff was notified by Fred O. Kendrick, the Director of Human Resources for Bayer, that because her thirty-day leave had expired before her ERISA appeal was decided, her employment was administratively terminated effective November 7, 2003, but with the agreement that Plaintiff would be reinstated, if the disability benefit appeal was decided in her favor.  It is undisputed that Plaintiff understood that her termination was conditional and that her employment would be reinstated if her ERISA appeal was granted.

Following the clinical review conducted by Dr. James Wallquist, Kemper, at the request of Bayer, arranged for an independent medical examination ("IME") of Plaintiff by Frank T. Vertosick, M.D.  After the examination, Dr. Vertosick opined in a written report as follows:

> [Plaintiff] has significant limitations, but I believe Ms. Krensavage can function at a full time sedentary level which is what she was released to by her treating surgeon.  Though he rescinded this release in November 2003, he did so purely at the request I believe of Ms. Krensavage in terms of her subjective complaints.
>
> . . .
>
> I do not dispute that Ms. Krensavage has significant pathology in her neck and back, but she is functioning on her own and able to drive without any medical restrictions on her license.  I do not believe at the age of fifty-nine years and

otherwise in good health that she should be considered totally disabled from any occupation at this time.

*(Vertosick Report, Exh. 28.)*

Kemper also arranged for surveillance on Plaintiff's activities on November 26, 2003, by an investigative service, Omega Insurance Services.  Among other things, the investigator followed Plaintiff to and from the IME at the office of Dr. Vertosick.

On December 28, 2003, Plaintiff was notified that the Social Security Administration had granted her application for disability benefits retroactive to October 2003.  Plaintiff continues to receive those benefits as of the date of her deposition, May 18, 2005.

On January 2, 2004, Kemper retained another orthopedic surgeon, Ira Posner, M.D., to perform a second General Peer Review of Plaintiff's file, which would take into account the information submitted by Plaintiff with and after her appeal, the results of the IME, and the report of the surveillance.  In his report of January 9, 2004, Dr. Posner opined as follows:

> [Plaintiff's] main complaint is that of pain in the cervical and lumbar spine, intermittent symptoms in her extremities, and severe muscle spasms in the cervical spine. These symptoms alone would not preclude her from participating in her usual work occupation, which is that of a light duty type job, but certainly she would benefit from some management of her symptomatology to allow her to better function at work.  It would also be beneficial if this individual cannot return to work activity that a Functional Capacity Evaluation be obtained for her.

*(Administrative File at 35.)*

After Kemper transferred Plaintiff's claim file to the Review Committee, the Review Committee retained Bruce L. Wilder, M.D., a board certified neurologist, to provide an independent opinion to the Review Committee as to Plaintiff's ability to function in a sedentary job.  Dr. Wilder determined that Plaintiff was not disabled from performing her job as an

Administrative Assistant as outlined in the Job Analysis, nor was she disabled from performing any position for which she is or could become qualified for by education, training, or experience.  *(Id. at 36-38.)*

On February 13, 2004, the Review Committee upheld the denial of LTD benefits to Plaintiff.

On August 24, 2004, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission in which she alleged disability discrimination based upon Bayer's failure to accommodate her by granting her disability benefits or additional unpaid leave.  *(Pl's Depo., Exh. 31.)*

Subsequently, on September 27, 2004, Plaintiff filed a Complaint in this Court in which she alleges wrongful denial of benefits against Defendant Bayer Corporation Welfare Benefits Plan under ERISA, 29 U.S.C. § 1132(a)(1)(B); disability discrimination against Defendant Bayer Corporation, in violation of the ADA, 2 U.S.C. § 12101, et seq., and retaliatory discharge against Defendant Bayer Corporation, in violation of ERISA, 29 U.S.C. § 1140.[3]

Plaintiff has moved for summary judgment on two counts of her Complaint:  (i) on her claim under ERISA that her request for LTD benefits was improperly denied by the Bayer Plan (Count I); and (ii) on her claim under the ADA that her employment was unlawfully terminated and/or that Bayer failed to accommodate her (Count III).

Defendants have filed a cross summary judgment motion in which they move for summary judgment on all of Plaintiff's claims.

_____

[3]     Plaintiff filed her original Complaint on September 27, 20024, followed by an Amended Complaint which was filed on October 4, 2004, and a Second Amended Complaint which was filed on February 23, 2005.

10

**DISCUSSION**

A.    *Plaintiff's Claim for Long-Term Disability Benefits against Bayer Corporation Welfare Benefits Plan*

      1.    <u>Standard of Review for a Benefits Denial under ERISA</u>

A claim for benefits under ERISA, § 502(a)(1)(B), must be brought against the plan itself or the administrator with discretionary authority and responsibility for the denial of the claim. *See 29 U.S.C. § 1132(d)(2).*  Although ERISA does not provide the standard of review for an action by a participant alleging that she has been denied benefits, in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101 (1989), the United States Supreme Court held that the appropriate standard for actions which challenge denials of benefits is a *de novo* standard unless the plan gives the "administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan" in which case an abuse of discretion standard is appropriate.  *See Mitchell v. Eastman Kodak Co.,* 113 F.3d 433, 437 (3d Cir. 1997) (citing *Firestone,* 489 U.S. at 115).  The *Firestone* court qualified its holding by noting that, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor" in determining whether there is an abuse of discretion.  *Firestone*, 489 U.S. at 115.

Although the arbitrary and capricious standard has been settled law since *Firestone*, courts have spent the last several years wrestling with the issue of how to interpret the language from *Firestone* regarding conflicts of interest.  The conflict of interest issue has been particularly troubling for courts reviewing eligibility determinations where the plan grants the claims fiduciary discretionary authority *<u>and</u>* where that same entity funds the plan because of

11

the inherent conflict between those two roles.  *See Smathers v. Multi-Tool, Inc./Multi--Plastics, Inc., Employee Health and Welfare Plan*, 298 F.3d 191, 199 (3d Cir. 2002).  Such a case presents a conflict of interest that, although not extraordinary, warrants a "more penetrating view of [an] administrator's decisionmaking process."  *Id.*

The Court of Appeals for the Third Circuit resolved this vexing issue when it decided *Pinto v. Reliance Standard Life Insurance Co.,* 214 F.3d 377 (3d Cir. 2000).  According to *Pinto*, an eligibility determination will be subject to heightened arbitrary and capricious review in situations where the plan administrator acted under a conflict of interest.  Specifically, the appellate court has instructed district courts to apply a "sliding scale" of heightened arbitrary and capricious scrutiny if evidence indicates that the eligibility determination was influenced by a conflict of interest.  *Pinto,* 214 F.3d at 394; *see also Lasser v. Reliance Standard Life Ins. Co.,* 344 F.3d 341 (3d Cir. 2003).  Courts may take into account the following factors in determining whether, and how much, to heighten the standard of review:  (1) the sophistication of the parties; (2) the information accessible to the parties; (3) the exact financial arrangement between the insurer and the company; and, (4) the current status of the fiduciary and the stability of the employing company.  *Pinto,* 214 F.3d at 378.

In addition to these factors, demonstrated procedural irregularity in the review process may also warrant a heightened standard of review.  *Kosiba v. Merck,* 384 F.3d 58, 66 (3d Cir. 2004).  Examples of procedural bias include:  inconsistent treatment of the same authority, *Pinto,* 214 F.3d at 394; requesting an independent medical exam even though "every piece of evidence" in plaintiff's file indicated that plaintiff was disabled, *Kosiba,* 384 F.3d at 67; and, permitting the same individual to conduct both Plaintiff's first medical review as well as her

appellate medical review, *Dorsey v. Provide Life & Accident Ins. Co.*, 167 F. Supp. 2d 846 (E. D. Pa. 2001).

In the instant case, the parties do not dispute that the Plan had discretionary authority to determine whether Plaintiff qualified for benefits.  However, the parties disagree over what standard of review applies.  Plaintiff argues that because a conflict of interest exists a heightened standard of review is warranted.  Defendants argue that the arbitrary and capricious standard should apply.

According to Plaintiff, a conflict of interest exists because (i) the Plan Administrator is also the employer and (ii) the LTD Plan is funded by Bayer.  In response, Defendants contend that a heightened standard of review is not warranted because (i) Bayer has retained a disinterested third party, Kemper Services, to investigate and make the initial determination of claims and (ii) under the LTD Plan, the benefits are not paid directly by Bayer out of its general revenues, but instead are paid out of a Trust to which Bayer makes periodic contributions. Employees also contribute to the cost of their benefits through premiums deducted from their pay.

An analogous issue came before the Third Circuit in *Stratton v. DuPont De Nemours & Co.*, 363 F.3d 250 (3d Cir. 2004).  In *Stratton*, the employer, DuPont, structured its benefit program such that Aetna U.S. Healthcare ("Aetna"), the insurance carrier for DuPont, initially reviewed benefit claims.  DuPont heard appeals from Aetna's benefits determinations. The benefits plan was funded by DuPont, on a "case-by-base basis instead of on a fixed price basis that has been actuarially determined." *Id.* at 254. Because DuPont both funded the plan and heard appeals, DuPont may have had a financial incentive to deny coverage on benefit claims,

as each claim dollar avoided was a claim dollar that accrued to DuPont.  *Id.* at 255.  However, the Third Circuit found that "the fact that DuPont structured the program by using Aetna to hear the claim initially provide[d] the safeguard of neutral evaluation," and consequently, the conflict of interest "counsel[ed] for only a slightly heightened standard." *Id.*

The Court finds the Third Circuit's holding in *Stratton* is applicable in this case.  Like the plan in *Stratton*, Defendant Bayer's LTD Plan is structured such that an independent third party administrator, Kemper Services, makes the initial benefits determinations. Defendant Bayor, like DuPont, hears only appeals from the third party administrator's determinations. Although Defendant Bayer may have a financial incentive to deny claims on appeal, it has, like DuPont, structured the program to "provide[ ] the safeguard of neutral evaluation." *Id.* Therefore, following *Stratton*, the financial conflict of interest in this case warrants a slightly heightened standard of review.

However, the administrative record does not contain much evidence of the bias or procedural anomalies that have prompted other courts to apply substantially heightened review. Nor did the Plaintiff present any evidence or arguments regarding other factors that might justify heightened scrutiny, such as the sophistication of the parties, the information accessible to the parties, or the financial status of the plan fiduciary.  *See Pinto,* 214 F.3d at 392.

Accordingly, based upon these circumstances, and in accordance with *Pinto, Smathers, and Stratton,* the Court will apply a slightly heightened arbitrary and capricious standard of review.  In reviewing Bayer's decisions, the Court will keep in mind Bayer's financial interest and will conduct a "more penetrating review" of the decision-making process than it would normally conduct under the arbitrary and capricious standard.  *Smathers,* 298 F.3d at 199.

14

2.      The Merits of the Denial of Benefits

Now that the issue of the appropriate level of arbitrary and capricious review has been resolved, the Court must review the Committee's determination that Plaintiff was not totally disabled and, therefore, not eligible for LTD Benefits under that standard of review.  For this analysis, the Court may only review the evidence that was before the administrator when it made the decision being reviewed.  *Mitchell v. Eastman Kodak Co.,* 113 F.3d 433, 440 (3d Cir. 1997).  When applying the heightened form of the arbitrary and capricious standard, courts should be deferential, but not absolutely deferential.  *Pinto,* 214 F.3d at 393.  Courts should "look not only at the result -- whether it was supported by reason -- but at the process by which the result was received." *Id.*

Plaintiff's Motion for Summary Judgment relies almost exclusively on the opinions of her treating physicians for the conclusion that she was wrongly denied LTD Benefits. Defendants counter that the Bayer ERISA Review Committee exercised the discretion vested in it under the ERISA plan in question and concluded that Plaintiff had failed to carry her burden of demonstrating a disability within the meaning of the Plan based on the administrative record before it.

In this case, the decision of the Committee was supported by three Peer Review physicians, two of whom are Orthopedic Surgeons and one of whom is a Neurologist, who each conducted thorough reviews of Plaintiff's medical files and gave clear and consistent explanations for their opinions.  As to Plaintiff's neck spasms, the condition identified as disabling by Plaintiff's treating physicians, Dr. Wilder explained:

The surgery she underwent, even taking into consideration the post-operative complication of epidural hematoma, does not ordinarily produce disabling "spasms" several months afterward, and certainly not permanently.  No other condition appears to have developed since her surgery that would ordinarily produce disabling "spasms."  She has no objective abnormality or condition which would ordinarily disable her from performing her regular duties of Administrative Assistant III.  None of her treating physicians have identified any present condition which would ordinarily produce disabling "spasms."

*(Administrative File 38.*)

In addition to the medical records review, Plaintiff was given an IME by another independent physician, who also concluded that Plaintiff could perform the duties of an Administrative Assistant.

Finally, there was evidence provided to the Review Committee that undermined the credibility of Plaintiff's subjective complaints of neck and spasms.  Immediately before and after reporting to Dr. Vertosick that her pain was a "10 on a scale of 10," Plaintiff was observed, and videotaped, driving and shopping in a number of stores, without displaying any visible signs of pain or difficulty.

Although Plaintiff's treating physicians repeatedly indicated that she was physically unable to perform any work activities, the Review Committee relied on the contrary opinions provided by independent doctors when it concluded that Plaintiff was able to return to work in a sedentary position.  The opinions of Plaintiff's treating physicians are entitled to no greater weight than the opinions of physicians retained by the claims or Plan Administrator on the subject of Plaintiff's ability to work.  *Black & Decker Disability Plan v. Nord,* 558 U.S. 822, 834 (2003) ("Courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on a plan

administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."); *See Stratton,* 363 F.3d at 258.

Lastly, courts have consistently held that ERISA plan administrators are not bound to follow Social Security Disability determinations, in view of the different standard applied under that program. *Dorsey v. Provident Life and Accident Ins. Co.,* 167 F. Supp. 2d 846, 856 (E.D. Pa. 2001). Accordingly, under *Black & Decker*, the Committee's contrary conclusion is viable and the Committee's lengthy and involved review of the Plaintiff's claim supports the Court's conclusion that the denial of the Plaintiff's claim was not arbitrary and capricious, even under a slightly heightened arbitrary and capricious standard of review.

B.    *Plaintiff's Disability Claim Against Bayer*

Plaintiff argues that the termination of her employment and/or Bayer's refusal to grant her additional leave or disability leave status violated the ADA.

The ADA provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, . . . and other terms, conditions and privileges of employment." *42 U.S.C. § 12112(a).* To establish a *prima facie* case of disability discrimination under the ADA, Plaintiff must establish that she: (1) has a disability within the meaning of the ADA; (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) was subject to some adverse action as a result of her disability. *Burskirk v. Apollo Metals*, 307 F.3d 160 (3d Cir. 2002). Bayer argues that Plaintiff is unable to establish a *prima facie* case of

17

disability discrimination because she is not "otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer" and, therefore, it is entitled to summary judgment.

The ADA defines "disability" as a "physical or mental impairment that substantially limits one or more of the major life activities of [the] individual." *42 U.S.C. § 12102(2)(A).*

It is undisputed that Plaintiff has a physical impairment, namely severe degenerative problems throughout her spine. For the purpose of this decision only, the Court finds that Plaintiff has made the requisite showing that she has a disability within the meaning of the ADA.

However, protection under the ADA extends only to "a qualified individual with a disability." *42 U.S.C. § 12112(a).* Determining whether an individual is qualified requires a two-part analysis: (i) whether the individual meets the necessary prerequisites for the job, such as education, experience, training, and the like; and (ii) whether the individual can perform the essential job functions, with or without reasonable accommodation. Bayer does not take issue with the first requirement. In fact, it is undisputed that while employed as an Administrative Assistant, Plaintiff's performance was always satisfactory.

It is the second prong of this inquiry that is disputed. Bayer argues that "Plaintiff's admissions in her deposition testimony, in her documentation submitted to Bayer and in her application for and recent (sic) of Social Security Disability benefits that she was not, as of the date of her termination able to do her Administrative Assistant job preclude her from creating an issue of fact in this Court as to whether she can satisfy the *prima facie* case that she was 'otherwise qualified.' " Defs' Br. at 15. The Court agrees.

18

Courts have consistently held that a plaintiff claiming to be qualified for the purpose of an ADA claim, but who has made representations of disability in support of an application for Social Security Disability Income ("SSDI") benefits, is judicially estopped from establishing the prima facie element of qualification, unless a clear factual showing is made to explain the inconsistency between the positions taken in the different *fora*. *Cleveland v. Public Management Systems Corp.*, 526 U.S. 795, 807 (1999); *Turner v. Hershey Chocolate USA,* 440 F.3d 604 (3d Cir. 2006); *Detz v. Greiner Industries, Inc.*, 346 F.3d 109, 118-20 (3d Cir. 2003); *Motley v. New Jersey State Police*, 196 F.3d 160, 166 (3d Cir. 1999), *cert. denied*, 529 U.S. 1087 (2000) ("It is difficult to get around the conclusion that, in at least one *fora*, Motley was not completely honest."); *Russell v. Paul Revere Life Ins. Co.*, 148 F. Supp.2d 392, 409 (D. Del. 2001) (concluding that a plan administrator is "in no way bound by the determination of the SSA); *see also Black and Decker Disability Plan v. Nord*, 538 U.S. 822, 833-34 (2003) (highlighting the distinctions between eligibility determinations made by a plan administrator under an ERISA plan and those made by the SSA).

In the instant case, the summary judgment record evidence reflects that Plaintiff not only applied for and accepted SSDI retroactive to a date before her employment was terminated, but she has candidly acknowledged her own belief that she was then and continues to be incapable of performing work of any kind, including sedentary office work. *(Pl's Depo. at 41, 60, Exh. 32.)* Furthermore, Plaintiff obtained and submitted in support of her claim for LTD benefits, a medical opinion dated November 6, 2003, that she was permanently and totally disabled from any and all work, a conclusion with which Plaintiff agreed under oath at her deposition. *(Pl's Depo. at 44.)* The Court concludes that there is a clear inconsistency between

Plaintiff's prior representations of total disability and her contention that she is a qualified individual under the ADA.  Further, the Court finds that Plaintiff has failed to explain the apparent inconsistency.  Accordingly, the Court rules that Plaintiff's prior assertions that she is totally and permanently disabled judicially estopp her from suing under the ADA.  *See Turner v. Hershey Chocolate USA,* 440 F.3d 604 (3d Cir. 2006)*; Motley v. New Jersey State Police*, 196 F.3d 160 (3d Cir. 1999)*, cert. denied*, 529 U.S. 1087 (2000).

However, assuming *arguendo* that judicial estoppel does not preclude Plaintiff's ADA claim, the Court continues to find that summary judgment in Bayor's favor is appropriate.

Plaintiff contends that Bayer violated the ADA by terminating her employment and/or not accommodating her by granting additional leave or disability leave status.  It is undisputed that it is Bayer's policy not to allow an employee to return to work without medical clearance.  It is also undisputed that when Plaintiff attempted to return to work on November 5, 2003, she did not have a medical clearance and she unequivocally stated to the Medical Department that she did not believe she was physically ready to return to work.

Furthermore, it is well settled that granting indefinite or open ended disability leave is not an accommodation required of an employer under the ADA.  *See Conoshenti v. Public Service Electric & Gas Co.*, 364 F.3d 135, 151 (3d Cir. 2004) ("the federal courts that have permitted a leave of absence as a reasonable accommodation under the ADA have reasoned, explicitly or implicitly, that applying such a reasonable accommodation at the present time would enable the employee to perform his essential job functions *in the near future*.") (emphasis added);  *Fogelman v. Greater Hazleton Health Alliance*, 2004 WL 2965392 (3d Cir. Dec. 23, 2004) (unpublished opinion);  *Byrne v. Avon Products*, 328 F.3d 379, 380-81 (7th Cir.

2003) ("[n]ot working is not a means to perform the job's essential functions."); *Rascon v. U.S. West Communications, Inc.*, 143 F.3d 1324, 1334 (10th Cir. 1998) ("[A]n indefinite unpaid leave is not a reasonable accommodation where the plaintiff fails to present evidence of the expected duration of her impairment."); *Peter v. Lincoln  Technical Inst.*, 255 F. Supp.2d 417, 437 (E.D. Pa. 2002) ("many courts have found that a request for indefinite leave is inherently unreasonable, particularly where there is no favorable prognosis.); *Shafnisky v. Bell Atlantic, Inc.*, 2002 WL 31513551 (E.D. Pa. Nov. 5, 2002) ("Open ended disability leave is not a reasonable accommodation.")

In the instant case, the summary judgment record evidence reflects that even had Plaintiff's leave been extended for the additional unspecified time that she requested, she would have continued to be unable to perform the duties of her former position.  In fact, in a letter dated January 3, 2005, over a year after Plaintiff's employment had been terminated, Plaintiff's attorney represented that Plaintiff continued to be unable to perform her former job competently without substantial pain and inconvenience.  Plaintiff testified in her deposition that this statement remained true as of the date of her deposition, May 18, 2005.

The Court finds that there is no genuine issue of material fact as to Plaintiff's non-qualified status for the Administrative Assistant position.  Plaintiff testified that she continues to be unable to perform the duties of her former position and Plaintiff has not been released by her physicians to return to work.  Accordingly, the Court finds that Plaintiff has failed to demonstrate the necessary second prong of her *prima facie* case.

However, assuming *arguendo* that Plaintiff was able to meet all three requisite prongs of her *prima facie* case, the Court finds that summary judgment in Bayor's favor would still be appropriate.

The familiar burden-shifting framework of *McDonnell Douglas* applies to ADA claims when there is no direct evidence of discrimination.  Once a *prima facie* case has been established, the burden of production shifts to defendant to articulate a legitimate, non-discriminatory reason for its employment action. Defendant satisfies its burden of production by introducing evidence that, if taken as true, would permit the conclusion that there was a non-discriminatory reason for its decision.  *See Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 235 (3d Cir. 1999).  The final burden of persuasion is on the Plaintiff, who must present evidence that the Defendant's proffered reasons for its actions are a pretext for discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

Bayer contends that Plaintiff's employment was terminated because Plaintiff had medical restrictions which prevented her from performing the essential functions of her job.  In order to discredit Bayer's articulated reason, Plaintiff need not produce evidence that necessarily leads to the conclusion that her employer acted for a discriminatory reason.  *See Keller v. Orix Credit Alliance, Inc*., 130 F.3d 1101, 1108-9 (3d Cir. 1997) ("The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination"). Plaintiff may survive summary judgment by submitting evidence from which a factfinder could reasonably either: (1) disbelieve the employer's articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's actions.  *See Fuentes v. Perskie*, 32 F.3d

22

759, 764 (3d Cir. 1994).  Specifically, Plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence," and hence infer that the employer did not act for the asserted non-discriminatory reasons.  *Fuentes,* 32 F.3d at 765.

The Court finds and rules that the record is completely devoid of any evidence of pretext.  In fact, Plaintiff's work restrictions are undisputed and Plaintiff repeatedly admitted during her deposition that she continues to believe that she is unable to perform the duties of her former position.

After careful review of the record, this Court concludes that Plaintiff has presented no evidence to create a genuine issue of material fact regarding the credibility of Bayer's legitimate non-discriminatory reasons for terminating her employment. Nor has Plaintiff presented evidence suggesting inconsistency, contradictions, incoherencies, or implausibilities in Bayer's proffered reason for Plaintiff's termination.

While Plaintiff's termination was unfortunate, the Court has not found any evidence of record to support an inference of discrimination.  For all the foregoing reasons, the Court finds that Bayer is entitled to summary judgment because Plaintiff has not produced adequate evidence from which a reasonable factfinder could conclude that Bayer's legitimate business reason was pretextual or that its real motivation was discriminatory animus on the basis of disability.

C.      *Plaintiff's Claim of Retaliatory Discharge Under ERISA Against Bayer*

Section 510 of ERISA provides as follows:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . ., or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

*29 U.S.C. § 1140.*

To establish a claim of retaliation in violation of Section 510, the plaintiff must satisfy the elements of the familiar *McDonnell Douglas* standard.  *DiFederico v. Rolm Co.*, 201 F.3d 200, 204-05 (3d Cir. 2000).  Additionally, the plaintiff must demonstrate that the defendant had the "specific intent" to violate § 510.  *Id.*  This requires that the plaintiff must show that "the employer made a conscious decision to interfere with the employee's attainment of pension eligibility or additional benefits."  *Id.*

In the instant case, the Plaintiff has no direct evidence of a retaliatory intent as she admitted that no one criticized her or made negative statements about her having applied for disability leave.  *(Pl's Depo. at 62.)*

As discussed above, it is undisputed that Plaintiff had exhausted all available leave before her termination and that she was not physically able to return to work.  Even more importantly, the summary judgment record evidence reflects that Bayer took affirmative steps to assure that Plaintiff's termination would not impede consideration of her application for LTD benefits and that her employment would be reinstated if her appeal was granted.  The Court finds and rules that there is simply no record evidence that the termination of Plaintiff's employment was in retaliation against her for exercising her rights under ERISA.

24

**Conclusion**

For the hereinabove stated reasons, the Court finds and rules that the decision to deny the Plaintiff's claim for long term disability benefits was not arbitrary and capricious, even under a slightly heightened arbitrary and capricious standard of review.  There is no treating physician rule in ERISA which requires deference to the opinions of the Plaintiff's treating physicians and the Court further finds that there was sufficient evidence to support the Review Committee's conclusion that Plaintiff was not "totally disabled" under the definition of that term as set forth in the Plan.

Viewing the facts in the light most favorable to Plaintiff, the Court also finds that she has failed to establish a *prima facie* case of disability discrimination under the ADA.  In the alternative, the Court finds that Plaintiff has presented no evidence to create a genuine issue of material fact regarding the credibility of Bayer's legitimate non-discriminatory reasons for terminating Plaintiff's employment.

Lastly, the Court finds that Plaintiff has failed to establish a *prima facie* case of retaliatory discharge under ERISA.

An appropriate Order follows.


McVerry, J.

25

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

PAULA KRENSAVAGE,                    )
                                     )
            Plaintiff,               )
                                     )
      v.                             )          02: 04cv1476
                                     )
BAYER CORPORATION and                )
GAYER CORPORATION WELFARE            )
BENEFITS PLAN,                       )
                                     )
            Defendants.              )

**ORDER OF COURT**

AND NOW, this 27th day of September, 2006, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

(1) The Motion for Partial Summary Judgment filed by Plaintiff, Paula Krensavage, is

**DENIED**; and

(2) The Motion for Summary Judgment filed by Defendants, Bayer Corporation and

Bayer Corporation Welfare Benefits Plan, is **GRANTED**.

The clerk is ordered to docket this case closed.


                              BY THE COURT:

                              s/Terrence F. McVerry
                              United States District Court Judge

cc:     Avrum Levicoff, Esquire
          Levicoff, Silko & Deemer
          Email: alevicoff@lsandd.net

          John J. Myers, Esquire
          Eckert, Seamans, Cherin & Mellott
          Email: jmyers@eckertseamans.com

          William J. Klemick
          Bayer Corporation and Business Services
          Email: william.klemick.b@bayer.com